UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| SUSANA L.,<br>        Plaintiff,<br>    v.<br>KILOLO KIJAKAZI,<br>        Defendant. | Case No. 20-cv-05521-DMR<br><br>**ORDER ON CROSS MOTIONS FOR SUMMARY JUDGMENT**<br>Re: Dkt. Nos. 23, 27 |

Plaintiff Susana L. moves for summary judgment to reverse the Commissioner of the Social Security Administration's ("SSA") final administrative decision, which found Plaintiff not disabled and therefore denied her application for benefits under the Social Security Act, 42 U.S.C. § 401 *et seq*. The Commissioner cross-moves to affirm. For the reasons stated below, the court grants Plaintiff's motion, denies the Commissioner's motion, and remands to the agency for further proceedings.

**I.    PROCEDURAL HISTORY**

Plaintiff filed an application for Supplemental Security Income ("SSI") benefits on May 31, 2016, alleging disability beginning on April 7, 2016. Administrative Record ("A.R.") 366-74. After conducting two hearings, an Administrative Law Judge ("ALJ") issued a decision on July 5, 2019 denying benefits. A.R. 15-31; *see* A.R. 38-71 (transcript of November 1, 2018 hearing); A.R. 72-107 (transcript of May 9, 2019 hearing). The ALJ found that Plaintiff had the following severe impairments: pseudotumor cerebri with shunt placement, obesity, depressive disorder, post-traumatic stress disorder ("PTSD"), cognitive disorder, and polysubstance dependence. A.R. 17. He determined that Plaintiff's mental impairments did not meet or medically equal the severity of a listed impairment. A.R. 18. He found that Plaintiff has "moderate restriction in understanding, remembering, or applying information, moderate difficulties in interacting with others; moderate

difficulties in concentrating, persisting, or maintaining pace; and moderate difficulties adapting or managing oneself." A.R. 18. Accordingly, the ALJ determined that Plaintiff has the following residual functional capacity ("RFC"):

> [She can] perform light work as defined in 20 CFR [§] 416.967(b), except she can occasionally do any climbing or kneeling; frequently stoop; occasionally perform complex tasks and constantly perform simple, routine tasks, occasionally interact with the public, coworkers, and supervisors; cannot do employments with high-production goals; cannot do employments where the job duties require life or death decisions; cannot do employments where the job duties require confrontational situations (such as in security work); can maintain attention to job duties for a two-hour period; and needs a set work routine that changes occasionally.

A.R. 19. The ALJ evaluated the medical evidence addressing Plaintiff's physical and mental health impairments and determined that even "with generous consideration of the claimant's subjective symptoms," his determination of Plaintiff's RFC was consistent with the medical record. A.R. 19-29. Relying on the opinion of a vocational expert, who testified that an individual with Plaintiff's age, education, work experience, and RFC would be able to perform certain jobs existing in the national economy, the ALJ determined that Plaintiff is not disabled. A.R. 30.

After the Appeals Council denied review of the ALJ's decision, A.R. 1-6, Plaintiff sought review in this court. [Docket No. 1.]

## II.     ISSUE FOR REVIEW

1.     Did the ALJ err in weighing the medical evidence?

## III.    STANDARD OF REVIEW

Pursuant to 42 U.S.C. § 405(g), a district court has the authority to review a decision by the Commissioner denying a claimant disability benefits. "This court may set aside the Commissioner's denial of disability insurance benefits when the ALJ's findings are based on legal error or are not supported by substantial evidence in the record as a whole." *Tackett v. Apfel*, 180 F.3d 1094, 1097 (9th Cir. 1999) (citations omitted). Substantial evidence is evidence within the record that could lead a reasonable mind to accept a conclusion regarding disability status. *Richardson v. Perales*, 402 U.S. 389, 401 (1971). It is more than a mere scintilla, but less than a

1    preponderance.  *Saelee v. Chater*, 94 F.3d 520, 522 (9th Cir. 1996) (internal citation omitted).

2    When performing this analysis, the court "must consider the entire record as a whole and may not

3    affirm simply by isolating a specific quantum of supporting evidence." *Robbins v. Soc. Sec.

4    Admin.*, 466 F.3d 880, 882 (9th Cir. 2006) (citation and quotation marks omitted).

5          If the evidence reasonably could support two conclusions, the court "may not substitute its

6    judgment for that of the Commissioner" and must affirm the decision. *Jamerson v. Chater*, 112

7    F.3d 1064, 1066 (9th Cir. 1997) (citation omitted).  "Finally, the court will not reverse an ALJ's

8    decision for harmless error, which exists when it is clear from the record that the ALJ's error was

9    inconsequential to the ultimate nondisability determination." *Tommasetti v. Astrue*, 533 F.3d

10   1035, 1038 (9th Cir. 2008) (citations and internal quotations omitted).

## IV.    DISCUSSION

Plaintiff argues that the ALJ erred in evaluating the medical opinion evidence by according little weight to certain opinions of her treating psychiatrist Dr. Silvia Colmenares, M.D., and her treating therapist Fiona Glas, LCSW.  Plaintiff does not challenge the ALJ's determinations regarding her physical impairments.

### A.    The ALJ's Weighing of the Medical Evidence

#### 1.    Legal Standard

In cases such as this one involving applications for benefits made before March 27, 2017, courts within the Ninth Circuit employ a hierarchy of deference to medical opinions based on the relation of the doctor to the patient.  Namely, courts distinguish between three types of physicians: those who treat the claimant ("treating physicians") and two categories of "nontreating physicians"—those who examine but do not treat the claimant ("examining physicians") and those who neither examine nor treat the claimant ("non-examining physicians").  *Lester v. Chater*, 81 F.3d 821, 830 (9th Cir. 1995).  A treating physician's opinion is entitled to more weight than an examining physician's opinion, and an examining physician's opinion is entitled to more weight than a non-examining physician's opinion.  *Id*.  "As a general rule, a treating physician's opinion is entitled to 'substantial weight.'"  *Ford v. Saul*, 950 F.3d 1141, 1154 (9th Cir. 2020) (quoting *Embrey v. Bowen*, 849 F.2d 418, 422 (9th Cir. 1988)).

3

The Social Security Act tasks the ALJ with determining credibility of medical testimony and resolving conflicting evidence and ambiguities. *Reddick v. Chater*, 157 F.3d 715, 722 (9th Cir. 1998). To reject the opinion of an uncontradicted treating physician, an ALJ must provide "clear and convincing reasons." *Ford*, 950 F.3d at 1154; *Lester*, 81 F.3d at 830. If another doctor contradicts a treating physician, the ALJ must provide "specific and legitimate reasons" supported by substantial evidence to discount the treating physician's opinion. *Ford*, 950 F.3d at 1154; *Lester*, 81 F.3d at 830. "The ALJ can meet this burden by setting out a detailed and thorough summary of the facts and conflicting clinical evidence, stating his interpretation thereof, and making findings." *Revels v. Berryhill*, 874 F.3d 648, 654 (9th Cir. 2017) (quoting *Magallanes v. Bowen*, 881 F.2d 747, 751 (9th Cir. 1989)). An opinion that is more consistent with the record as a whole generally carries more persuasiveness. *See* 20 C.F.R. § 416.927(c)(4). For applications for Social Security benefits filed before March 27, 2017, "[t]he medical opinion of a claimant's treating doctor is given 'controlling weight' so long as it 'is well-supported by medically acceptable clinical and laboratory diagnostic techniques and is not inconsistent with the other substantial evidence in [the claimant's] case record.'" *Revels*, 874 F.3d at 654 (quoting 20 C.F.R. § 404.1527(c)(2)); *see also* 20 C.F.R. § 416.927(c)(2) (same).

"The ALJ must consider all medical opinion evidence" in the record. *Tommasetti*, 533 F.3d at 1041 (citing 20 C.F.R. § 404.1527(b)). Furthermore, "treatment records must be viewed in light of the overall diagnostic record," and treatment notes documenting improvement in a condition "must be read in context of the overall diagnostic picture the provider draws." *Ghanim v. Colvin*, 763 F.3d 1154, 1162, 1164 (9th Cir. 2014). The ALJ is "not permitted to 'cherry-pick' from those mixed results to support a denial of benefits." *Garrison v. Colvin*, 759 F.3d 995, 1018 n.23 (9th Cir. 2014) (quoting *Scott v. Astrue*, 647 F.3d 734, 739-40 (7th Cir. 2011)); *see Holohan v. Massanari*, 246 F.3d 1195, 1207 (9th Cir. 2001) (concluding that ALJ's specific reasons for rejecting medial opinion was not supported by substantial evidence because "the ALJ selectively relied on some entries in Holohan's records . . . and ignored the many others that indicated continued, severe impairment").

The opinions of Dr. Colmenares and Ms. Glas were contradicted by some mental health

4

opinion evidence in the record. For example, they both found marked impairment in Plaintiff's concentration, persistence and impairment, social functioning, and abilities to adapt at work, accept instructions, and otherwise participate in work-related tasks. A.R. 768-69, 1130. These findings were corroborated by Dr. Fahmida Zaman, Ph.D., a consultative examiner who twice concluded that Plaintiff was "severely impaired' as to her attention and concentration, immediate and delayed memory, and executive functioning. A.R. 650-651, 756-57. However, another examining professional, Dr. Elizabeth Whelchel, Ph.D., found that Plaintiff showed moderate impairment with detailed and complex instructions, pace and persistence, adapting to changes in routine work-related settings, staying consistent with pace and progress, and/or being aware of work safety issues; and no impairment with regards to maintaining attention and concentration. A.R. 675-76. Similarly, non-examining state agency consultants Dr. Daniel Gross, Psy.D., and Dr. Brady Dalton, Psy.D., reviewed Plaintiff's medical records and found only moderate to no significant limitations in Plaintiff's functioning. A.R. 120-22, 137-38. Because the opinions of Plaintiff's treating providers were contradicted by others, the ALJ was required to provide "specific and legitimate reasons" supported by substantial evidence to discount their opinions. *Ford*, 950 F.3d at 1154; *Lester*, 81 F.3d at 830.

### 2. Analysis

Dr. Colmenares and Ms. Glas prepared numerous treatment notes after meeting with Plaintiff from February 13, 2017 through October 24, 2018 and from January 9, 2019 through March 5, 2019—as well as completing three mental health assessments on October 24, 2017, October 31, 2018, and February 28, 2019.

The ALJ considered the three mental health assessments. A.R. 27 (citing Exs. 14F, 19F, 23F). Finding that Dr. Colmenares and Ms. Glas "did not describe much in the way of specific functional limitations," the ALJ assigned "some weight" to their opinions "to the extent that [Plaintiff's] performing constant simple routine tasks and needing a set work routine are reasonably consistent with the . . . objective findings" in the record on Plaintiff's "below-average intellectual functioning and some deficits in memory and concentration." A.R. 27; *see* A.R. 23 (referring to observations that Plaintiff possessed "low-average intellectual functioning and

decreased memory, concentration, insight, and judgment, [which] are consistent with limiting the claimant to occasional complex tasks and constant simple, routine tasks."). However, the ALJ afforded "little weight generally" to the opinions of Dr. Colmenares and Ms. Glas because he determined that they were inconsistent with observations in the record as to Plaintiff's "mental status evaluation" and her "relatively intact self-reported daily activities." A.R. 27.

Plaintiff argues that the ALJ erred by affording little weight to the opinions of Dr. Colmenares and Ms. Glas. She contends that the ALJ inappropriately cherry-picked evidence to support his conclusions while ignoring or omitting other evidence, including within the same reports, that were inconsistent with his findings. Plaintiff does not challenge the weight the ALJ assigned to the opinions of other examining and reviewing medical professionals, nor does she challenge his assignment of some weight to Dr. Colmenares's and Ms. Glas's findings on her ability to conduct simple routine tasks.

The Commissioner counters that the ALJ accorded the proper weight to Dr. Colmenares's and Ms. Glas's opinions because they were only partially consistent with the record as a whole and Plaintiff's reported activity levels. The Commissioner further argues that Dr. Colmenares's and Ms. Glas's opinions were inconsistent with their own notes, and that Ms. Glas is not acceptable medical source and therefore the ALJ only had to give a germane reason for rejecting her opinion. The court will not address these two arguments because the ALJ made no such findings in his decision. *See Brown-Hunter v. Colvin*, 806 F.3d 487, 492 (9th Cir. 2015) (the court "can affirm the agency's decision to deny benefits only on the grounds invoked by the agency"); *Bray v. Comm'r*, 554 F.3d 1219, 1225-26 (9th Cir. 2009) ("Long-standing principles of administrative law require [this court] to review the ALJ's decision based on the reasoning and factual findings offered by the ALJ—not post hoc rationalizations that attempt to intuit what the adjudicator may have been thinking."). Therefore, the court confines its analysis to the ALJ's assignment of little weight to the Colmenares and Glas opinions based on his determination that they were inconsistent with "largely normal objective observations on mental status evaluation … as well as the claimant's relatively intact self-reported daily activities[.]" A.R. 27.

//

### a. Mental Status Observations

First, the ALJ afforded little weight to the Colmenares and Glas assessments because "the extreme degree of limitations outlined are generally inconsistent with the . . . largely normal objective observations on mental status." A.R. 27. Those observations included Plaintiff's "intact memory, appropriate mood and affect, and adequate insight and judgment." *Id.* Earlier in his opinion, the ALJ found the following "objective observations on [Plaintiff's] mental status evaluation were . . . generally within normal limits":

> [A]ppearance with makeup and groomed hair; appropriate dress; intact alertness; intact orientation; no bizarre behavior, normal tone, rate, and prosody of speech; good mood; appropriate or full-ranged affect; good eye contact; normal speech; adequate fund of knowledge and memory for recently learned information; adequate ability for abstraction; grossly intact cognitive function; adequate insight and judgment; linear thought process; normal thought content; intact memory; no homicidal or suicidal ideation; and no obvious hallucinations or delusions during evaluation. . . . Notably, objective cognitive testing with the Trail Making Test [conducted by Dr. Whelchel] showed "no significant difficulty with sustained attention and/or mental tracking."

A.R. 23 (internal citations omitted) (citing Exs. 3F, 6F, 15F, 16F, 19F, 21F, 25F).

In finding that "objective observations on [Plaintiff's] mental status evaluation were … generally within normal limits," the ALJ highlighted certain observations but ignored others, including some made by her treating providers over several years of visits, that suggest a more compromised mental status. A.R. 23; *see, e.g.*, A.R. 768-70, 1129-32, 1134-81, 1222-23, 1281-93. For example, in one assessment, Dr. Colmenares and Ms. Glas indicated that Plaintiff usually presented as fairly groomed, cooperative, alert, and fully oriented, with organized thought processes. A.R. 1129. The ALJ highlighted those observations, but ignored others in the same report that Plaintiff showed prominent depressive symptoms with very low motivation, anhedonia, social withdrawal, a feeling of "numbness," disconnection from other people, chronic poor concentration, intermittent flashbacks of severe physical abuse by Plaintiff's ex-husband, frequent nightmares, chronic sleep disturbance, easy irritability, and occasional auditory hallucinations likely related to Plaintiff's sporadic use of methamphetamine. A.R. 1129. Similarly, at one visit, Dr. Colmenares reported that Plaintiff presented as "[f]airly groomed" and with "organized, linear" thought processes while at the same time reporting Plaintiff's "clear short-term memory

impairment," "somewhat impoverished" thoughts, and "poorly articulated" speech. A.R. 1155; *see also* A.R. 1164 (Dr. Colmenares reporting "affect is mostly blunted, but slightly tearful at times," and "[s]peech is poorly articulated, sometimes difficult to understand"), A.R. 1282 (Dr. Colmenares reporting "unchanged" presentation with "fair grooming" and "organized, though impoverished and somewhat concrete" thought process). Dr. Colmenares noted that "[d]ue to presence of cognitive impairment, [Plaintiff] is a very limited historian w[ith] respect to [symptoms]." A.R. 1156; *see also* A.R. 1130. Other records also reflect Dr. Colmenares's assessment that Plaintiff is a poor historian with at least "mild" short-term memory impairment and poorly articulated speech. A.R. 1163-64. These kinds of observations and opinions by Plaintiff's treating providers, made over several years of visits, undermine the ALJ's determination of Plaintiff's mental impairments, including his finding that she has "no significant difficulty with sustained attention and/or mental tracking." A.R. 23; *see* A.R. 675. Instead, the treating records show repeated symptoms of poor memory, difficulty speaking, and limited concentration. Also, while Plaintiff may not have presented with hallucinations at the time of her evaluations, Dr. Colmenares and Ms. Glas repeatedly noted reports by Plaintiff of experiencing occasional auditory hallucinations and "intrusive memories" of past physical abuse by her ex-husband and ex-father-in-law and childhood sexual abuse by family members. *See, e.g.*, A.R. 1174-77, 1284-85, 1289.

The record also contains two consultative examinations by Dr. Zaman that substantiate Dr. Colmenares's and Ms. Glas's opinions. For example, Dr. Zaman observed that while Plaintiff appeared for examination "casually dressed" with "makeup and groomed hair," she had "neglected dental hygiene," and demonstrated an "anxious and guarded attitude" and "depressed and anxious affect." A.R. 650; *see also* A.R. 755 (observing "neglected hygiene," including dental hygiene, "malodorous" "facial expressions were suggestive of anxiety and sadness"). She maintained a "circumstantial" thought process, had difficulty finding words, had a shaky voice and mumbled or occasionally stumbled, and was distractible. A.R. 650, 755. She also demonstrated memory impairments. A.R. 650, 755. After conducting screenings, Dr. Zaman observed that Plaintiff showed poor persistence, pace, and attention, memory difficulty, and a rigid, extremely concrete

1  and disorganized thought process. A.R. 651, 755-56. Ultimately Dr. Zaman concluded that
2  Plaintiff demonstrated "sleep disturbance, poor emotional regulation, poor concentration and
3  attention, feelings of worthlessness, hopelessness, and disorganization." A.R. 651; *see also* A.R.
4  756.
5        In sum, review of repeated objective observations by Plaintiff's treating providers,
6  corroborated by Dr. Zaman, illustrates that the ALJ's findings on mental status did not reflect the
7  totality of the record. Instead, the ALJ improperly selected certain treatment notes and
8  assessments while disregarding other contradictory evidence, including notes from the same
9  treatment visit. *See* A.R. 23, 768, 1135, 1143, 1155, 1166, 1168, 1173. Moreover, the ALJ's
10  findings relied on two treatment notes by medical doctors who treated Plaintiff for physical
11  conditions only and not for mental health at all. *See* A.R. 23 (citing A.R 780, 1266). The ALJ did
12  not offer any explanation for relying on these medical opinions while discounting Dr.
13  Colmenares's and Ms. Glas's records, or for ignoring evidence in the same treatment records that
14  did not support his findings. Accordingly, the court finds that the ALJ erred because he did not
15  offer specific and legitimate reasons to disregard Dr. Colmenares's and Ms. Glas's opinions.

### b.     Activities of Daily Life

17        The ALJ also afforded little weight to Dr. Colmenares's and Ms. Glas's opinions because
18  they were inconsistent with his determination that Plaintiff had "relatively intact self-reported
19  daily activities, including the capacity for basis self-care, using public transportation, and
20  shopping in stores." A.R. 27. The ALJ determined that "[Plaintiff was able to generally complete
21  her personal needs" and set forth a number of different activities of daily life that he deemed were
22  "consistent with at most moderate difficulties adapting and managing oneself." A.R. 24. These
23  activities included "episodically complet[ing] light house-chore duties," "shop[ping] for
24  necessities," and "us[ing] public transportation," as well as "socializ[ing] daily on the phone and
25  in person," "interact[ing] with peers" and "interact[ing] appropriately with consultative
26  examiners," in addition to other tasks. A.R. 24. Once again, the ALJ based his findings on
27  discrete notes in the record that included individual treatment notes from Dr. Colmenares and Ms.
28  Glas while discounting other evidence. A.R. 24 (citing Exs. 5E, 9E, 3F, 4F, 6F, 10F, 16F, 21F,

1   24F, 26F).

2          Other evidence in the record contradicts the ALJ's findings and demonstrates that Plaintiff
3   reported difficulty completing her daily activities. For example, Ms. Glas noted that "[Plaintiff]
4   reports that she is still having difficulty going out in areas where there are grounds of people
5   because she feels unsafe. She is avoiding things that remind her of the assault she had, and said
6   that she is easily startled by noises." A.R. 1162. Ms. Glas also observed that "[Plaintiff] said that
7   it[]is difficult for her to ride public transportation or be around groups of people because she feels
8   unsafe"). A.R. 1174; *see also* A.R. 1289 ("[Plaintiff] is hypervigilant and finds it difficult to be in
9   public."). Likewise, social worker Sandra Aseltine, LCSW from Southeast Health Center noted
10  that Plaintiff reported she was "anxious/hypervigilant[,] dislikes crowds[,] on bus will select single
11  seat or location where she can monitor environment . . . sometimes refuses to walk with friends,
12  family if feeling unsafe." A.R. 872-73; *see also* A.R. 869-70. Ms. Glas also reported that
13  "[Plaintiff] continues to be functionally impaired by symptoms of PTSD. Her anxiety and
14  hypervigilance keep her in her room much of the time." A.R. 1139. Those PTSD symptoms
15  "include[e] nightmares, flashbacks, fear of people, and hypervigilance [that] interferes with daily
16  functioning." A.R. 1147. Ms. Glas further reported that Plaintiff "avoids going outside because it
17  causes her anxiety" and "doesn't go out much." A.R. 1176-77.

18         Based on these and similar evaluations, Dr. Colmenares and Ms. Glas assessed Plaintiff as
19  having moderate to marked impairment in engaging in activities of daily living. A.R. 768-69,
20  1130. They attributed this to chronic, cognitive symptoms resulting from Plaintiff's repeated
21  history of experiencing head trauma, mood symptoms, and PTSD. A.R. 769, 1130-31. Dr.
22  Colmenares expected that although Plaintiff's mood symptoms may possibly improve once she
23  achieves full sustained remission from methamphetamine use, she would continue to endure
24  significant functional limitations as a result of her history of severe and prolonged abuse during
25  childhood and adulthood and repeated head trauma. A.R. 769. Dr. Colmenares and Ms. Glas also
26  concluded that Plaintiff's long-term cognitive impairment due to neurological complications
27  impacted her activities of daily living and intellectual functioning. A.R. 1130.

28         Dr. Zaman's consultative evaluations corroborate Dr. Colmenares's and Ms. Glas's

1    opinions on Plaintiff's abilities to engage in activities of daily living.  Dr. Zaman said that Plaintiff
2    "demonstrates limitations to her activities of daily life," including "in procuring and preparing
3    meals" and that "she gets easily lost in a store and often fearful and requires an escort."  A.R. 648.
4    She "rarely leaves her room and spends time primarily in b[e]d."  *Id.*  Based on her psychological
5    assessments, Dr. Zaman opined that "[Plaintiff] would have difficulty with her activities of daily
6    living particularly when she is not in a controlled environment."  A.R. 652.  She likely "would be
7    unable to get to work on time due to her disorganization, fatigue, irritability, depressed and
8    anxious mood" and "would have difficulty interacting appropriately with the general public, her
9    peers and supervisors."  *Id.*  After her second evaluation, Dr. Zaman opined that "[Plaintiff]
10   continues to demonstrate impairment in her daily activities . . . [and] would have difficulty with
11   her activities of daily living particularly when she is not in a controlled environment."  A.R. 757.

The ALJ overlooked this record evidence from Dr. Colmenares and Ms. Glas, corroborated by Dr. Zaman, when finding that Plaintiff engaged in "relatively intact daily activities" and that her treating mental health professionals failed to "describe much in the way of specific functional limitations."  *See* A.R. 24, 27.  To the contrary, Dr. Colmenares and Ms. Glas opined that because of her mental health and cognitive conditions, she was significantly limited in her functional abilities and activities.

In sum, the ALJ erred by not providing specific and legitimate reasons for assigning little weight to the Colmenares and Glas opinions.

**B.     Remedy**

"Administrative proceedings are generally useful where the record has not been fully developed, there is a need to resolve conflicts and ambiguities, or the presentation of further evidence may well prove enlightening in light of the passage of time."  *Treichler v. Comm'r*, 775 F.3d 1090, 1101 (9th Cir. 2014) (internal quotations and citations omitted).  "Where there is conflicting evidence, and not all essential factual issues have been resolved, a remand for an award of benefits is inappropriate."  *Id.*  The court determines that in light of the conflicting medical opinions on Plaintiff's mental health status, remand for further proceedings is appropriate here.

//

11

## V. CONCLUSION

For the foregoing reasons, Plaintiff's motion for summary judgment is granted and the Commissioner's cross-motion is denied. This matter is remanded for further proceedings consistent with this opinion.

**IT IS SO ORDERED.**

Dated: March 28, 2022



Donna M. Ryu
United States Magistrate Judge